The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We have two argued cases this morning. The first is number 20-2129, Pulse Electronics, Inc. v. U.D. Electronic Corporation. Mr. Carr. May I please the court? The board erred in its construction of effectively curved portion to mean any form of bend of the first conductors. This is overly expansive and impermissibly broad given the structure outlined in every claim. For example, in claim one, the effective radius of each said effectively curved portion being different for each of said first conductors. Also, this is incompatible with the purpose of the invention. At the top of Appendix 4, the board points out the purpose of the invention that a conductor assembly is claimed to have a highly efficient use of interior volume to mitigate crosstalk and EMI to a high degree and to allow for use of a variety of different components as well as a reduction of the labor cost. Mr. Carr, excuse me, this is Judge Lynn. Wouldn't the reduction in crosstalk and interference occur any time the respective electrical connectors are offset from each other and not entirely parallel? Your Honor, there are lots of factors that go into crosstalk and EMI. The most pertinent purpose of the invention is to have a highly efficient use of the interior volume and to allow for the components to fit inside the connector. Why does that mandate that the curved portion be 90 degrees? The purpose of the invention does not mandate it. The claim structure mandates that the effectively curved portion to be construed as having approximately a 90 degree curve. The problem, though, is in those early claims, Claim 1, for example, the claim is not limited in that respect. You obviously know how to do that because that was done in, for example, Claim 22. But Claim 1 is broader. What gives you a basis to argue that the claim should be narrowed, that a limitation should be read into the claim? Your Honor, the basis for that is at the end of Claim 1 where it recites the effective radius of each said effectively curved portion being different for each of said first conductors. So that if the radius is different for each of said first conductors, the only way that this connector assembly as claimed in Claim 1 could be designed is that the effectively curved portion has to approximately curve by 90 degrees. Counsel, this is Judge O'Malley. You rely heavily on Figure 1, which does show essentially a switchback that looks like 90 degrees, but I don't see anything in your description of Figure 1 that calls out a 90 degree switchback as either being required or desired or even discussed. Am I missing something? Your Honor, at the top of Columns 17, Lines 4 through 8, the specification describes Figure 1 and the description of the conductors, and in that description it explicitly states 90 degree turn. And Figure 1 is not the only figure with the 90 degree turn. It's every figure of the 302 pad. And also in the provisional that was filed, there were pictures of the actual prototype before these claims were written, and the reason these claims were written so broadly was so competitors could not design around them. But there's simply no way to have a different... Judge, that's quite an admission. It admits that you wrote it more broadly than 90 degrees to prevent competitors from designing around it. So under those circumstances, why should we limit the claim to language that you didn't use? The claims are not limited to just 90 degrees. Someone could design a connector that has an 89 degree curve, a 91 degree curve. The issue is that the effective curve portion has to have a different radius for each of said first conductors, and that's just Claim 1. I would direct the court respectively to Claim 6 where it's explicit. The substrate is substantially vertical and substantially orthogonal to the front face of the housing. So the only way the first conductors can electrically connect with the substrate is they have to make the 90 degree turn because the connector assembly, everything in these connector assemblies is built at 90 degree angles. Everything has to be orthogonal. There's just no way around it. Counsel, Judge Dyke's point is a good one. If you were arguing infringement here and the alleged infringer had an 80 degree bend and they argued that we should take these 90 degree references from the specification and read them into the claims, you'd be arguing that we shouldn't. Right? Your Honor, I don't think you can make the argument because the purpose of the invention is to have a highly efficient use of the interior volume. If you have an 80 degree bend, then the connector would have to be larger, and there's no way for the connector to use the volume efficiently if there's an 80 degree or let's just say 60 degree bend. There's no way for the connector… …to read from the specification into the claims unless it's very clear that that is absolutely necessary, applies both to the patent holder and to the putative infringer, right? Yes, Your Honor. Pulse disagrees that you could have a 60 degree angle. The connector has to come in straight at 90 degree angle, and the conductors have to make approximately a 90 degree angle to hit the substrate that's vertical and orthogonal to the front face of the housing. And the problem with the board's construction is it also improperly construes the term in isolation. The board did not construe it with the context of the rest of the claim. They simply looked at effectively curved portion without taking into account the effective radius that has to be different for each of the conductors. And there's no technical explanation in the final written decision on how any bend can mitigate EMI or allow for, you know, use of a variety of different components within the connector. Mr. Carr, this is Judge Lynn. Could you direct your attention to the claims that were in the amendment that were not allowed for indefiniteness? Yes, Your Honor. And just to start the conversation, if you look at Claim 17 on Appendix Page 593. Right. So Claim 17, producing a desired effect of being curved by approximately 90 degrees. What does the language producing a desired effect of being add to that claim? Because without that language, it would read, it includes a portion curved by approximately 90 degrees. So what does that language add? Producing a desired effect adds that the conductor does not exactly have to curve by approximately 90 degrees. It allows for a broader reading of the statement that directly follows, which is being curved by approximately 90 degrees. Maybe you should have used the word approximately. Approximately curved or something like that. Because I'm confused by this language. Yes, Your Honor. I see that I'm into my rebuttal time. All right. That was not a question, so thank you. Okay. Thank you, Mr. Carr. We'll hear from Mr. Schloss. Thank you, Your Honor. Good morning, and may it please the Court. Picking up on the discussion regarding the claim construction, I think the Court has it right that by limiting the claim the way that PULSE is trying to do would improperly import limitations into the claim that just aren't there. And obviously, it's pretty much black-letter law that that can't be done. I'd also like to point out that we're looking at the figures, that PULSE is relying on the figures to say that the only way this can be read is for the effectively curved portion to mean approximately 90 degrees. But the patent itself expressly states that the embodiments that PULSE refers to are not the only embodiments described by the invention or that the invention is supposed to cover. And I point the Court to Appendix 820, which is the patent, Column 19, beginning around Line 18, where it says, This description is in no way meant to be eliminated, but rather should be taken as a lesson in... Well, that language appears in every single patent, doesn't it? It does, but it has to have meaning. And I think in this particular case, it definitely has meaning. So, I mean, I think it's important language, and I think it emphasizes the fact that the limitations that PULSE is relying on to give the claim from this narrow interpretation are not the only thing that should be considered, that the claims themselves are broader than that. But let me turn my question to your friend on the other side around. I mean, if this were infringement, I mean, surely you'd be saying there's nothing in this patent except showing a 90-degree curve, right, or a 90-degree switchback. And so we should allow the broader claiming. I mean, I'm not... We didn't argue the infringement part of this case, so I don't... I mean, I suppose we would be trying to narrow the claims, but I really don't see how you can look at this particular patent and say that the only bend allowed is approximately 90 degrees. It doesn't say that. There's no language in this specification that would support that. If I were to argue it, I would probably be wrong and should lose because the language is not there. And so while I understand Your Honor's question, I just... I don't think that that would be the case here. This is Judge Knight. Could I turn you to the desired effect language? The argument here, of course, is that desired effect, yes, standing alone is ambiguous. But here, the claim language of 1720 and 21 seems to define what the desired effect is, which is approximately 90 degrees. So why doesn't that bring clarity to something that would otherwise be ambiguous? Two points, Judge Dyke. One is, and I think to follow up on a question you asked Paulson's counsel, is if that's the case, why include the term desired effect at all? It doesn't add anything but makes the language ambiguous and indefinite. So if it could be understood without the terms, as you know, patent claims, every term is supposed to be given weight. And so if these terms don't add anything, why are they there? They just add confusion. Well, just because they're separate language doesn't mean it's a separate term. I mean, desired effect could be read, as Judge Dyke pointed out, in conjunction with the rest of that phrase. Yes, Your Honor. And if that is actually what the situation was in the Ropar case, which we cite in our brief, the term desired effect there was found by the court to be ambiguous, and the terms that it was modifying were understood. And so by adding the term desired effect, the whole phrase may have had meaning, but the court still found it to be ambiguous because the use of the term desired effect didn't add anything and added confusion. In many cases where a phrase such as desired effect is used, the subsequent language is understood, but the whole phrase may still be indefinite because of the addition of the superfluous language. What about the colloquy with Judge Turner that Pulse had in discussing desired effect? Well, I think that's exactly the point Judge Turner was getting at, and I think he got it right. I think he used the phrase that it was a nonce term, and I think he was trying to get some understanding of why the term was used in the first place, as Judge Dyke was, and I don't think he got a satisfactory answer. I think he realized that the addition of the language desired effect didn't add anything. And as was pointed out, if Pulse's goal was to make this a little broader, it could have used other language to do that. There are many ways to draft a claim such as that without using a phrase such as desired effect, which calls into question subjectivity. What are the meets and bounds of the patent if a person of skill in the art is trying to determine what a desired effect is? What is infringement? If somebody designed an apparatus that was similar, but the desired effect was not to achieve that particular purpose, was there infringement? If we have to look into the intent of the designer of the alleged infringing product, it's very difficult to really determine what the meets and bounds of the claims are. Mr. Swann, this is Judge Lynn. Could you direct your attention to your cross-appeal for a minute before your time is up? Yes, I would, Judge Lynn. Thank you. I was going to turn to that. I think our position with respect to the cross-appeals is the Board cited no evidence in reaching its decision that claims 22 and 23 should be allowed. There are no citations to the record. Underlying that, the legal point that the Board relied on, that there was only a logical premise and not a true motivation to combine, I think is belied both by the record, because Dr. Leddy talked about why a person of skill in the art would be motivated to combine the Hughes and Kahn references with respect to claims 22 and 23. But also, there's no explanation about what a logical premise is and why it would be inadequate in this particular case. And so I think the Board got it wrong on that particular issue. Back up a moment, because I read what was said about proposed claims 22 and 23, and I see a lot of language about someone skilled could do this or could do that, which, of course, isn't sufficient to provide a motivation to combine. Is there any place that your expert says that somebody would have done it other than the sentence quoted by the Board? Yes, Your Honor. I believe Dr. Leddy, in his supplemental declaration, which is paragraphs 23 through 29, beginning on page 1394 of the appendix, Dr. Leddy discusses at some length why Kahn and Hughes can be combined. That's exactly the problem I'm talking about. Just look at paragraph 23. It says a person of skill in the art could modify Kahn. Where does he say that someone of skill in the art would do it and give a reason why they would do it? Well, I think could and would, they are different words. I understand that. They go to perhaps what a person of skill in the art would actually be able to do, but I think in this instance, the fact that he says a person of skill in the art could be motivated to do it is sufficient, because he's talking about how Kahn and Hughes cover the same parts and they cover the same types of circuitry and other things. So I think using the word could is sufficient in this case. And if there are no further questions, I think I'll just reserve whatever time I have left for rebuttal. Okay. Thank you. Any other questions, Mr. Schloss? Thank you. Mr. Carr? Yes, Your Honor. Three points. We haven't talked about the prior art yet. The biggest issue with the Board's decision was that if we look again at Claim 6, that requires the substrate to be orthogonal and vertical within the housing, none of the four references discussed by the Board, Kahn, Hughes, Loudermilk, and Scheer, include a substrate that is vertical and orthogonal as claimed in Claim 6. And also, to go back to Your Honor's earlier question about having the 80-degree curve, the patent explains that a reduced labor cost is important to the invention, so the smaller size that effectively uses efficient use of the interior volume would necessitate the 90 degrees. And in all the claims, including Claim 6, where the modular plugs must be inserted orthogonal to the front face, and there's no other possible angle for the claim first conductors than approximately 90 degrees. And then the second point on desired effects in Pulse's yellow brief on page 49, Pulse explains that in Nautilus and Datomize and also in District Court Case Master Engineer Design, that the desired language has been found to not be indefinite when it's used in an objectively verifiable way, as it is here. My understanding is that you're saying that that language does mean something. It isn't just referring to the approximately 90-degree language, that it has some meaning over and above that and somehow brings in another concept of approximately. Did I understand you correctly about that? Your Honor, it's tied to the entire claim, but it's mostly tied to the first conductor and the approximately 90 degrees. No, but the desired effect... Wait, you're not answering my question. Earlier, I think perhaps in response to a question by Judge Lynn, you said, no, this language is not meaningless, it imports another concept of approximately into the claim. Is the language meaningless or is it not meaningless? Your Honor, the language is not meaningless. It goes to the approximately 90 degrees. In fact, the desired effect does not have to be exactly 90 degrees, but it needs to be approximately 90 degrees. This is Judge Lynn. I mean, the claim says approximately already. After the language in question here, it says curved by approximately 90 degrees, so the approximate concept is already explicitly set forth in the claim. Correct, Your Honor. It's describing the first conductors, the bend of the first conductors, as they're approximately, as the curve approximately turns 90 degrees. I have another question. That's the desired effect. Yes, Your Honor. Is the desired effect the effect produced by the approximately 90 degree curvature or is the desired effect the fact of curving the wires by 90 degrees? In other words, the desired effect could refer to the fact of the curvature or it could refer to some result that's produced by the fact of the 90 degree curvature, and I'm not sure which one it means. Your Honor, it refers to when the connector enters the recess of the housing, those conductors, the desired effect of those conductors is that they approximately curve 90 degrees. So it's the fact of their curvature. Correct, Your Honor. Okay. And the second point on the prior art is neither Kahn, Laudermilch, or Scheer have 90 degree curvature of the conductors. The ultimate change in direction is that these conductors run in straight lines. So none of the prior art is even close to having a 90 degree turn other than this external connector of Hughes, which is a sideways connector that's external. It doesn't have any substrate within the housing that is orthogonal or vertical. Okay. Mr. Carr, I think we're about out of time unless one of my colleagues has further questions.  Thank you, Your Honor. And Mr. Schloss, I think you have no rebuttal time because the cross-appeal wasn't discussed by Mr. Carr. Yes, I understand, Your Honor. I agree. Thank you. Thank you, Mr. Carr. Thank you, Mr. Schloss. The case is submitted.